WO                                                                                    **JWB**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Oscar Bernal Ramirez, | ) | No. CV 05-2291-PHX-MHM (HCE) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Warden Bartos, et al., | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion for Summary Judgment (Doc. # 30), Plaintiff's Response (Doc. # 37), and Defendants' Reply (Doc. # 41) thereto. The Court will grant Defendants' motion and terminate this action.

**I.     Procedural Background**

Plaintiff is a prisoner in the Arizona Department of Corrections (ADC) and at the time relevant to this lawsuit was housed at the Lewis-Barchey Unit of the Arizona State Prison Complex. Plaintiff filed a Complaint presenting one claim for relief against Defendants Warden Ivan Bartos, Dr. John Lockhart, Nurse Patricia Dudley, Facility Health Administrator ("FHA") Richard Pratt, and Assistant FHA Sharon Malcom (Doc. # 1).

Plaintiff alleged that he seriously injured his eye several years ago and that his eye was re-injured during a fight at the prison. As a result, he has serious vision problems. Plaintiff contended that he submitted numerous health needs requests, but Defendants failed to provide the proper glasses for his eye condition and failed to provide the proper treatment. Plaintiff further contended that Defendants incorrectly concluded that sunglasses were not

medically necessary for his permanent eye condition, and that without proper treatment his vision will continue to deteriorate. Plaintiff claimed that Defendants were made aware of his serious medical condition, but failed to properly treat him and acted with deliberate indifference towards his serious medical needs.

Defendants moved for summary judgment and contended that Plaintiff merely desires to keep his Ray-Ban street sunglasses instead of accepting the prescription glasses prescribed for him by the ADC's medical staff (Doc. # 30). Specifically, Defendants argued that (1) they have not been deliberately indifferent to Plaintiff's eye condition, (2) Plaintiff has not alleged or demonstrated any injury resulting from any alleged deliberate indifference, and (3) Bartos, Malcom, and Pratt did not personally participate in any alleged constitutional violation, and therefore are not proper Defendants.

**II.    Factual History**

Plaintiff conceded to the facts as recited by Defendants in their Statement of Facts except where noted (See Doc. # 31, Doc. # 37 at 2).

Plaintiff suffered two injuries to his right eye before he entered the ADC in late 1993. While Plaintiff was in ADC custody between 1993 and 1995, he complained of blurry vision, pain, headaches, light sensitivity, and tearing; Plaintiff received eye drops, a temporary eye patch, a skull x-ray, and an ophthalmology evaluation. Plaintiff also requested a Special Needs Order ("SNO") to wear shaded glasses to visitation. That request was denied and Plaintiff was not prescribed prescription glasses or sunglasses.

Plaintiff was not incarcerated between 1995 and 2000. Plaintiff's eyes remained dry and sensitive to light and weather changes, but Plaintiff never sought treatment for his eye condition during that time. Instead, Plaintiff wore non-prescription sunglasses at all times.

Plaintiff re-entered the ADC in 2000. In November of that year, Plaintiff engaged in a fight with another inmate and was hit in the right eye. Following the fight, Plaintiff was treated by ADC medical staff and at the Maricopa Medical Center ("MMC") emergency room, where he was prescribed artificial tears eye drops. Thereafter, Plaintiff repeatedly complained about his eye. As a result, Plaintiff frequently saw ADC doctors between

December 2000 and May 2001.  Plaintiff was eventually referred to an eye specialist at the MMC ophthalmology department.  On June 7, 2001, Plaintiff was examined by the specialist, who recommended clear protective lenses.  Plaintiff was then referred to ADC optometry for protective lenses.

Between June and October 2001, medical staff at ADC repeatedly saw Plaintiff for his eye complaints.  Plaintiff requested prescription glasses and sunglasses in addition to a waiver to wear his personal sunglasses.  In October 2001, Plaintiff claimed that he did not receive the correct glasses.  As a result, Plaintiff was re-referred to optometry. In January 2002, FHA Jim Taylor administratively authorized a SNO allowing Plaintiff to wear his sunglasses at all times until he could be seen by optometry.  That SNO was renewed and effective until February 11, 2005.[1]  During the time period between 2002 and 2005, Plaintiff was seen on numerous occasions by ADC health staff to treat his eye condition.

Plaintiff was then scheduled to see the MMC eye specialist on March 29, 2004.  The ophthalmologist noted that Plaintiff's vision was substantially unchanged and recommended eye protection from the sun and new prescription glasses.  Plaintiff received his new prescription glasses in June 2004.

In January 2005, Plaintiff sought renewal of his SNO allowing him to wear his sunglasses at all times as it was set to expire on February 11, 2005.  Dudley saw Plaintiff on February 8, 2005 to review the request.  Upon her examination, Dudley determined that Plaintiff showed no sign of eye irritation due to exposure to bright light, exhibited no tearing or excessive blinking, and he did not complain of pain.  Dudley therefore issued a SNO permitting Plaintiff to wear sunglasses outdoors only.  The SNO expired in 30 days, on March 8, 2005.  The same day, Lockhart reaffirmed the SNO without examining Plaintiff. Lockhart reiterated that it was not necessary to wear sunglasses inside the prison and that the ADC had a security interest in prohibiting wearing sunglasses while indoors.  Plaintiff's SNO

---

[1] Dr. Macabuhay, another physician at the ADC, renewed the SNO from February 2002 - 2005 in its entirety, although an eye specialist at the MMC recommended that Plaintiff only wear sunglasses when exposed to sunlight or very bright light (Doc. # 31 at 68).

1   was renewed until April 30, 2005, permitting him to wear his sunglasses to outdoor visitation
2   but not while in the building.  On April 27, 2005, the SNO was renewed until July 3, 2005.
3       Dudley and Lockhart conducted a review of Plaintiff's extensive medical records and
4   determined that based on the medical information available, there was no medical reason for
5   Ramirez to wear sunglasses while indoors.  Consequently, Lockhart issued a new SNO for
6   one year allowing Plaintiff to wear sunglasses outside but not inside any building.  Lockhart
7   also scheduled an appointment with an eye specialist at the MMC.  Director Schriro, in
8   response to a grievance filed by Plaintiff, instructed ADC staff to allow Plaintiff to wear his
9   sunglasses at all times pending the evaluation at MMC.
10      Plaintiff was evaluated at the MMC ophthalmology clinic on August 1, 2005.  The
11  specialist recommended that Plaintiff wear polycarbonate prescription tinted sunglasses at
12  all times.  Consequently, prescription sunglasses were ordered for Plaintiff as directed.  On
13  September 9, 2005, Plaintiff's prescription sunglasses were ready for pickup.  Dudley told
14  Plaintiff that he would have to turn in his street sunglasses in order to obtain his new
15  sunglasses.  Plaintiff refused and did not pick up his prescription sunglasses.  Plaintiff
16  subsequently received his prescription sunglasses, but does not wear them at all times.
17  Plaintiff currently has a SNO stating that he must wear his prescription sunglasses at all
18  times.  That SNO does not have an expiration date.
19  **III.    Legal Standards**
20      **A.    Summary Judgment Standard**
21      A court must grant summary judgment if the pleadings and supporting documents,
22  viewed in the light most favorable to the non-moving party, "show that there is no genuine
23  issue as to any material fact and that the moving party is entitled to judgment as a matter of
24  law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
25  When considering a summary judgment motion, the evidence of the non-movant is "to be
26  believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty
27  Lobby, Inc., 477 U.S. 242, 248 (1986).  These inferences are limited, however, "to those upon
28

1  which a reasonable jury might return a verdict." <u>Triton Energy Corp. v. Square D. Co.</u>, 68
2  F.3d 1216, 1220 (9th Cir. 1995).

3         Rule 56(c) mandates the entry of summary judgment against a party who, after
4  adequate time for discovery, fails to make a showing sufficient to establish the existence of
5  an element essential to that party's case, and on which the party will bear the burden of proof
6  at trial. <u>Celotex</u>, 477 U.S. at 322-23. Rule 56(e) compels the nonmoving party to "set forth
7  specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere
8  allegations or denials of [the party's] pleading." The nonmoving party must do more than
9  "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>
10 <u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). There is no issue
11 for trial unless there is sufficient evidence favoring the non-moving party. <u>Anderson</u>, 477
12 U.S. at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not
13 significantly probative." <u>Id.</u> at 249-50.

14         **B.    Deliberate Indifference to a Serious Medical Need**

15         Defendants seek summary judgment on the basis that they have not acted with
16 deliberate indifference to Plaintiff's serious medical needs (Doc. # 30).[2] Plaintiff argues that
17 genuine issues of material fact preclude summary judgment (Doc. ## 37, 39).

18         States are prohibited by the Eighth Amendment from incarcerating inmates in
19 conditions that constitute cruel and unusual punishment of confinement. Pursuant to this
20 obligation, state officials who act with deliberate indifference to an inmate's serious medical
21 needs are liable in a § 1983 action. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). The Eighth
22 Amendment also prohibits deliberate indifference that subjects an inmate to an excessive risk
23 of future harm. <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993). "[D]eliberate indifference to
24 a prisoner's serious medical needs is the 'unnecessary and wanton infliction of pain.'"
25 <u>Estelle</u>, 429 U.S. at 104-05. A state prison official is deliberately indifferent if he both knows

26 ─────────────────

27         [2] Defendants do not dispute that Plaintiff's eye condition constitutes a serious medical
28 need. Consequently, the Court will only address whether Defendants have acted with
   deliberate indifference toward that need.

1   of and disregards an excessive risk to an inmate's health.  Farmer v. Brennan, 511 U.S. 825,

2   837 (1994).  Thus, to establish deliberate indifference, a plaintiff must establish that the

3   alleged harm was "sufficiently serious" and that the official acted with a "sufficiently culpable

4   state of mind."  Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298, 302-3 (1991)).  But a

5   prisoner does not have to prove that he was completely denied medical care in order to

6   demonstrate deliberate indifference.  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000).

7   Deliberate indifference may be shown when an official denies, delays, or intentionally

8   interferes with treatment or by the way that a medical professional provided the care.  Jett v.

9   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "[A] mere 'difference of medical opinion . . .

10  [is] insufficient, as a matter of law, to establish deliberate indifference.'"  Toguchi v. Chung,

11  391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted).  To prevail on a claim involving

12  choices between alternative courses of treatment, a prisoner must show that the course of

13  treatment the doctors chose was medically unacceptable in light of the circumstances and that

14  it was chosen in conscious disregard of an excessive risk to plaintiff's health.  Jackson v.

15  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

16          When a prisoner attempts to hold a prison employee responsible for deliberate

17  indifference, the prisoner must establish individual fault.  Leer v. Murphy, 844 F.2d 628, 634

18  (9th Cir. 1988).  Sweeping conclusory allegations will not be sufficient to prevent summary

19  judgment.  Id.  "The prisoner must set forth specific facts as to each individual defendant's

20  deliberate indifference."  Id. at 634.  He must prove that the specific prison official was

21  deliberately indifferent and that this indifference was the actual and proximate cause of the

22  injury.  Id.

23  **IV.    Deliberate Indifference Analysis**

24          Deliberate indifference amounts to criminal recklessness; a defendant must have

25  known that a plaintiff was at serious risk of being harmed, and decided not to do anything to

26  prevent that harm from occurring.  See Farmer, 511 U.S. at 836-837.  A plaintiff does not

27  have to use words like "reckless" or "intentional" to make out a case for deliberate

28

1    indifference.  He must merely plead that a defendant behaved in a way that can be construed
2    to show reckless or intentional conduct.

3              **1. Dudley**

4              Defendants argue that Plaintiff received superior treatment for his eye condition, as
5    evidenced by the numerous visits with ADC medical professionals as well as outside
6    specialists (Doc. # 30 at 10; Doc. # 31 at ¶¶ 20, 22-23, 25, 32-35, 41, 44, 46, 48, 51-53, 55,
7    59, 64, 66, 68-69, 71-76, 79-80, 82-83, 87-89, 91-93, 95, 107, and 118).  Defendants
8    specifically contend that Dudley based her decision to issue Plaintiff a SNO to wear his
9    sunglasses outdoors only on Plaintiff's medical records and her own evaluation and that her
10   conduct was not deliberately indifferent (Doc. # 41 at 3-4).

11             Plaintiff maintains that Dudley was deliberately indifferent to his serious medical needs
12   when she (1) modified Plaintiff's SNO to allow Plaintiff to only wear sunglasses while
13   outdoors and not inside buildings and (2) did not give Plaintiff his prescription sunglasses on
14   September 9, 2005 (Doc. # 37 at 4, 12).  Plaintiff further claims that as a result of Dudley's
15   actions, Plaintiff suffered increased blurred vision, pain, headaches, diminished vision, and
16   emotional suffering resulting from apprehension of permanent damage (Doc. # 37 at 6).

17             **a. Modification of Plaintiff's SNO**

18             Plaintiff argues that Dudley was not qualified to evaluate Plaintiff's request for a SNO,
19   and therefore her actions were *ipso facto* deliberately indifferent (Doc. # 37 at 10).  Plaintiff
20   also claims that because Dudley had knowledge of Plaintiff's prior SNOs and reviewed his
21   medical records, her decision to issue a SNO for outdoors only was deliberately indifferent
22   (id.).

23             Plaintiff does not provide any evidence that a nurse is not qualified to evaluate an
24   inmate for a SNO.  Rather, Plaintiff cites to a number of cases which require that a trained
25   medical professional render medical treatment.  But Plaintiff does not cite to a single case
26   establishing a requirement that *only* a physician can examine and make recommendations for
27   treatment of inmates.  Nor could he—a nurse is, by definition, a trained medical professional.

28

1  Long v. County of Los Angeles, 442 F.3d 1178, 1187 (9th Cir. 2006) (describing deliberate
2  indifference by "trained medical personnel" including both doctors and nurses).

3        Ultimately, Plaintiff's claim is nothing more than a difference of medical opinion.
4  First, while Plaintiff did have a SNO for several years that allowed him to wear his sunglasses
5  indoors, Plaintiff completely ignores the fact that Dr. Macabuhay issued that order *more*
6  *broadly* than the specialist at the MMC recommended (Doc. # 31, Ex. A ¶ 63).  Plaintiff
7  concedes that the MMC eye specialist merely recommended that Plaintiff wear sunglasses
8  when exposed to sunlight or very bright lights (Doc. # 31 at ¶ 68; Doc. # 37 at 2).
9  Consequently, the fact that Dr. Macabuhay issued a broad SNO to wear sunglasses indoors
10 does not entitle Plaintiff to a similar waiver in perpetuity.  Indeed, Plaintiff does not
11 meaningfully dispute that Dudley relied on (1) the specialist's recommendation that Plaintiff
12 wear sunglasses *only* when exposed to sunlight or very bright light, (2) her examination that
13 revealed no observable irritation to his eye, and (3) her knowledge of the lighting conditions
14 inside the prison when she issued Plaintiff's SNO (Doc. # 31 at ¶¶ 68, 92, and 95).  The
15 evidence also reflects that Dudley conducted a thorough review of Plaintiff's medical records,
16 further supporting the conclusion that her decision was *based on* Plaintiff's own medical
17 history and, as a result, was not deliberately indifferent to it (id. at ¶¶ 110-111).[3]

18        In short, Plaintiff has not shown that the course of treatment Dudley chose was
19 medically unacceptable in light of the circumstances and that it was chosen in conscious
20 disregard of an excessive risk to plaintiff's health.  Toguchi, 391 F.3d at 1058.

21                **b.  Failure to Issue Plaintiff his Prescription Glasses**

22        Plaintiff's second argument involves his receipt of his prescription sunglasses on
23 September 9, 2005.  Plaintiff avers that Dudley refused to give Plaintiff his prescription
24 sunglasses because Plaintiff refused to turn over his Ray-Ban sunglasses. The medical records
25 reflect that Dudley asked Plaintiff to turn over his Ray-Ban sunglasses, which would be

26

27
_____
28        [3] The evidence also reflects that Plaintiff never sought eye drops to alleviate any
alleged increased eye irritation between February and August 2005 (Doc. # 31 at ¶ 123).

1    placed in Plaintiff's property storage (Doc. # 31, Attach. A at 1).  Plaintiff concludes that
2    Dudley's failure to give him his prescription sunglasses constituted deliberate indifference.
3         Plaintiff's argument fails, however, for at least two reasons.  First, Dudley's request
4    to have Plaintiff turn in his old sunglasses does not equate to deliberate indifference.  At most,
5    Dudley acted in contravention of ADC property policy.  But a violation of an administrative
6    policy does not rise to the level of a constitutional violation.  Cf. U.S. v. Haswood, 350 F.3d
7    1024, 1029 (9th Cir. 2003) (an F.B.I. agent's failure to follow governmental policy on
8    recording interviews does not necessarily create a constitutional violation); U.S. v. Goodwin,
9    57 F.3d 815, 818 (9th Cir. 1995) (an assistant U.S. attorney's failure to comply with internal
10   department policy does not establish a constitutional deprivation).
11        Second, Plaintiff's argument fails because even though Plaintiff did not receive his new
12   prescription sunglasses on September 9, Plaintiff was never without sunglasses, vitiating his
13   argument that he was harmed (Doc. # 31 at ¶ 128, Ex. B at ¶ 42).  Plaintiff always had
14   protective eyewear; he was never forced to endure the sun without glasses.  Moreover,
15   Plaintiff acknowledged in his deposition that he tries to wear his non-prescription sunglasses
16   at all times as opposed to his prescription sunglasses (Doc. # 31 at ¶ 129; Ex. C at 11:41).
17   Because Plaintiff primarily uses his non-prescription sunglasses, no reasonable jury could
18   conclude that Dudley was deliberately indifferent when Plaintiff did not receive his
19   prescription sunglasses on September 9.  Defendants' motion will therefore be granted as to
20   Dudley.

21                    **2.  Lockhart**

22        Similarly, Plaintiff's claim against Lockhart fails.  Plaintiff rests his entire argument
23   on the fact that Lockhart (1) did not independently examine Plaintiff when he reviewed
24   Dudley's recommendation and (2) contemplated security needs in additional to medical needs.
25   But simply because Lockhart did not examine Plaintiff personally does not mean he was
26   deliberately indifferent to Plaintiff's eye condition.  On the contrary, Lockhart reviewed and
27   relied on Dudley's examination of Plaintiff in determining whether to uphold or change her
28   recommendation (Doc. # 31 at ¶ 111).  Indeed, the medical records reflect, and Plaintiff

1    concedes, that Lockhart reviewed Plaintiff's entire medical record on June 3, 2005 (id.).
2    Plaintiff has not introduced any authority that would require Lockhart to independently
3    evaluate Plaintiff before affirming or rejecting Dudley's recommendation. Moreover, the fact
4    that Lockhart contemplated security issues does not change this result.   Dudley's
5    recommendation was based on Plaintiff's medical records and her examination of him.
6    Simply because Lockhart provided an additional reason to accept Dudley's recommendation
7    does not change the underlying basis for it.

8        As a result, there is no evidence that Lockhart knew of and disregarded a risk to
9    Plaintiff's health. See Farmer, 511 U.S. at 836-837.  Defendants' motion will be granted as
10   to Lockhart.

11                    **3.  Pratt, Malcom, and Bartos**

12       Plaintiff has also named Facility Health Administrators Pratt and Malcom and Warden
13   Bartos as Defendants because they allegedly ignored ADC Director Schriro's July 2005
14   instruction to allow Plaintiff to wear his non-prescription sunglasses at all times (Doc. # 37
15   at 16).  Defendants argue that they did not personally participate in any decision to allow or
16   not allow Plaintiff to wear his sunglasses after Schriro's instruction, and as a result cannot be
17   held responsible for any alleged constitutional violation.

18       Plaintiff, in his deposition, acknowledged that he was permitted to wear his sunglasses
19   at all times after he received Schriro's instruction (Doc. # 41, Ex. 1 at 11:00:05).
20   Consequently, the Court cannot conclude that Pratt, Malcom, or Bartos deliberately ignored
21   Schriro's instruction.  Defendants' Motion will therefore be granted as to these three
22   Defendants.

23       **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment
24   (Doc. # 30) is **granted** and Plaintiff's action is **dismissed** with prejudice.  The Clerk is
25   directed to enter judgment accordingly.

26       DATED this 11th day of September, 2007.

27

28                                    _____
                                         Mary H. Murguia
                                      United States District Judge